We will hear argument next in No. 161729, Rembrandt Wireless v. Samsung Electronics. As soon as everybody is settled, why don't you come up and begin. May it please the court, the first and primary I submit issue in this case is the issue of claim construction. The relevant claim term is different types of modulation methods. The court construed different types of modulation methods to mean different types of families with an IE phrase following it that I will talk about. The Samsung proposed construction is that they are modulation methods which are incompatible. As to why first the court was wrong, this was a statement 14 years after filing. Not that that is controlling, but it was a statement that the court characterized as lexicography. Under cases like In re Paulson, lexicography to be effective must define a term with reasonable clarity, deliberateness, and precision. I submit that did not happen here. The proof that it did not happen here. It seems to me that there are a number of kinds of things that might go under the heading of lexicography which maybe have different standards. One is when the claim language does have an independently clear ordinary meaning or specification defined meaning and then you need a particularly clear form of lexicography, call it redefinition, to overcome that. When you add claim language or change the claim language and that presents a real question of what it means, then you might call drawing on the prosecution history and statements in lexicography, but it seems to me you are not drawing on it with this extra high burden of super clear. Don't we have the latter situation? They have changed the language in some of the claims to not just say different methods, but different types of methods and they then explained why they were doing that. The problem with that is it didn't clarify anything under any standard. It substituted a word which has no occurrence whatsoever in the specification or claims. It was not clear. The fact that it was not clear became evident. You don't have an indefiniteness challenge. We are not saying it is indefiniteness. We are saying it is the wrong construction. I will say why I believe the other one is right in a moment. What it did was it enabled Rembrandt to come in and argue to the jury a further meaning as if inserting limitations into the claims that it has to be modulation methods which are entirely non-overlapping. There is nothing like that in the specification. In fact, the specification teaches that the methods can overlap because it discloses examples that are overlapping. They are all phased in the specification. If that definition were correct, it would read effectively most of the examples given out. There is also the overlap... Aren't you allowed to, though, during prosecution, amend your claims to only claim certain parts of the scope of the specification? I would submit that that has to be something that is clearly done. That would be a disclaimer. The court didn't find disclaimer. There is some argument back and forth in the briefs about disclaimer, but then the disclaimer cases say that a disclaimer has to be clear, unmistakable, words of manifest exclusion or restriction. Going back to Judge Tronto's point, the situation we have here is where certain language was added to the claims, and at the exact same time, that language was given meaning in the comments given to the patent office. Under cases like Vitronics, which say that you can be a lexicographer in the prosecution history, why would that not be a definition of the claim term? Again, because the definition has to be reasonably clear, precise, deliberate. It doesn't address what the patent talks about at Incompatibility is the purpose of the patent. It's described ultimately as one of the objects. It's mentioned seven, eight, nine times earlier in the spec. When we go to the remarks section in the office action response, what more should the applicant have said that would satisfy you that they were being very clear about their intentions of what it means to be a different type of modulation? Well, I submit if they were going to have that be definitional... Assuming this isn't good enough, what would make it good enough? If that were going to be definitional, they should have explained what they later argued, which is that families don't have any overlapping characteristics. That is not explained. It's inconsistent with claims in the patent. Claims 26 and 43 specifically are a situation where the different modulation methods both can include phase. So that it's further inconsistent with the claims as well as examples that are given in the patent. It doesn't address the purpose of the invention. The specification itself makes clear what different modulation methods are over and over again. It makes clear that they're incompatible. Am I remembering correctly that once the claim construction was adopted, at that time there was no talk of the notion of no overlapping characteristics being used to modulate. That came up in the trial under the heading of applying the already adopted claim construction and you didn't at any point then say, we need a new claim construction. Your Honor, it came up first in the context of infringement testimony, having nothing to do with whether the prior art satisfied any definition. But the claim really ought to have the same meaning for both infringement and validity, right? It should, if I can address that. The way that it was utilized, the infringement expert Dr. Morrow testified that the accused Bluetooth products used modulation methods which were non-overlapping and therefore in different families. We have no problem with that. We didn't need a new construction. It's a non sequitur to conclude from that as is now in the briefs that the prior art, because it has overlapping methods, can't be in different families. They still can be in different families and the witness testified, Dr. Goodman for Samsung, that they are in different families. We had no reason to ask for a further construction at that point because we didn't know that then at the end of the trial and in the briefing, the further argument would be made that different families can only have non-overlapping characteristics. The testimony by Dr. Morrow on infringement has got nothing to do with whether or not the modulation methods in the prior art bore patent, which are overlapping, still can be in different families. In fact, Dr. Goodman testified without contradiction that they are. He testified that they are in different families. He wasn't cross-examined about that. No witness got up to testify for Rembrandt, which is very significant here. It sets this case apart from cases like Apple versus Samsung. No witness got up. No evidence was put in on behalf of Rembrandt on any of the five propositions they raised in their brief. They didn't put in evidence to say that bore doesn't work because it doesn't have non-overlapping methods and therefore fails the There's no nexus. They didn't put any evidence of nexus in. On the SUIAC reference suggesting that you should have the address in the header, Dr. Goodman testified about that. They didn't put in any evidence. They didn't cross-examine him about it. All they asked him is whether or not it was cited to the patent office, which it was. There's no contrary evidence in the record. On the issue of bore and reversion, Dr. Goodman testified about how reversion is disclosed in bore for purposes of the two claims in the 580 patent. He also relied on the bore patent, which of course itself extensively describes that, particularly in column 7. That was uncontradicted. There's no counter-testimony or evidence from Rembrandt. They didn't put on a witness. Finally, the last point that they raised, the upender teach-away, which may sound like there's fact issues, but upender says what it says. The witness for Samsung explained that upender is not a reference which criticizes, says it's an inferior option like in the In Re Muted case. This is a substantial evidence review though, right? You have evidence. Your expert says one thing. The other side has an expert that says another thing. They don't. Upender does, at a couple of different places, say some negative things about the polling embodiment. Actually, what upender says at appendix page A2428 is that polling is one of the more popular protocols for embedded systems because of its simplicity and determinacy. Then it says at the end, in the summary, this article's discussion of the special considerations and media access protocol strengths and weaknesses should allow you to select the best protocol to match your needs. That is not criticism. It's not discrediting. It's not calling a natural born killer from Satan like in the Allergan case. I submit under this court's precedent as a matter of law, it can't be a teach-away. It also says unacceptable. It also says poor efficiency. Those were the things that the other side's expert was pointing to. It's possible to infer that the jury read those references describing polling by upender and took that into account in trying to figure out whether a polling embodiment would be something that one of skill and the art would use. I don't think that's appropriate in this case, Your Honor. I submit that under this court's precedent, that would not be substantial evidence to support the verdict because this court has said that references in a teach-away context with that kind of language talking about options, pluses and minuses, that don't call something inferior, don't criticize, discredit, or otherwise discourage investigation. Upender says try them all. Consider them all. I would say as a matter of law, this court's precedent say that can't be a teach-away and therefore, it can't be substantial evidence to support the jury's verdict. Could you get to the marking issue? That's the novel legal issue that we have to wrestle with. It is. If I could just say one thing first, Your Honor, because I know at least two of your honors were involved in the AVID case having to do with harmless error. If there's a moment, I would like to address later why the construction would not be harmless error because of the reason I mentioned under the AVID standard. None of the other issues raised by Rembrandt is supported by substantial evidence from Rembrandt because they didn't put on a case with witnesses or evidence that would support the points in their brief. On the liability question, you, at least in this brief a couple of times, I think I checked, referred to a new trial request as well as the GMOL and both versions on the liability side of those trial requests. Yes. I submit that AVID supports both a new trial because all of the evidence doesn't support the other bases on which the judgment could be affirmed of non-obviousness. But even more of that, all of the evidence on these issues is the evidence from Samsung going the other way. There is no evidence to support any of the points raised by Rembrandt. Therefore, under the footnote in AVID, this would be an appropriate case like Calcar versus Honda where you should reverse the instruction and actually find that the prima facie case is unrebutted. The prima facie case of Samsung is unrebutted. There was a need to rebut like in Novo Nordisk. None of that was done by Rembrandt. They didn't put on a case. This is an appropriate case to reverse and find out. Now, marking. On marking, I would like to ask you just a preliminary question. If we were to the issue of disclaimer and marking, would that require a remand for a factual determination of whether the licensee practiced Claim 40? Your Honor, no, because this is a situation where the court below on the summary judgment motion found, and this is in the decision on summary judgment, that, quote, plaintiff concedes zone sold unmarked products that implement the 802.11 standard as they relate to Claim 40. That's part of the decision. It was never contested by Rembrandt. I know that there's some stuff in the brief now. Does that mean? That language would have been crystal clear for current purposes if it had said they'll contest that the zone product is covered by Claim 40. What is this business about? It relates to the Wi-Fi standard as it relates to Claim 40. I submit, Your Honor, it is saying that plaintiff concedes zone sold products as they relate to Claim 40. That may be awkward language. But they practice the Wi-Fi standard. Well, as it relates to Claim 40. I believe that that is the court saying there's no fact issue that Claim 40 was used in products marketed by zone, and the court goes on to the issue of law. I don't think that, despite the language, I think that's clear. The problem with that sentence is it cites to the plaintiff's opposition at page one. And then when you go look at the opposition at page one, at A3940, I don't see anything remotely looking like concession that this standard is practicing Claim 40. I don't know what else to say, Your Honor, except for the fact that the judge made findings in connection with the summary judgment decision that we have to live with. The court found, I submit this language says the court found that Claim 40 is used. But didn't at trial then later, there was evidence going the other way, suggesting that it was not being used, right? No, because, no, there wasn't, Your Honor, because of the summary judgment motion, we were not allowed to put in any evidence on Claim 40. I understand, but I think your adversary did put in evidence on it, and whether zone practiced Claim 40. I'm not saying that you were required to do so. I'm saying I think your adversary put in evidence saying that zone did not practice Claim 40. I don't have that in mind. I thought that was cited in the brief. They had two of their witnesses, Wood and somebody else, who made statements that none of zone's products practiced the patents without limitation to claim. And then in the JML, the oral JML, Rule 50A, colloquy, they said no evidence, and you said that we don't even think this is here because you took care of it on summary judgment, and Judge Gilstrap said, well, in light of that. It's preserved effectively. He didn't say it was preserved. But he understood that we intended to appeal that. I submit, Your Honor, that the summary judgment motion is what we have to deal with. That's what addressed Claim 40. The motion was decided against us. I think we would have gotten ourselves in a lot of hot water if we had tried to pursue Claim 40 in the trial. Just to be clear, you didn't actually ask to put on evidence about zone and Claim 40 and get told, what are you doing? This is settled. I don't remember anything like that. And frankly, Your Honor, I would have considered that inappropriate to do in light of the summary judgment motion. That ruling had been made. We didn't like it, but we needed to live with it. So we told the court we intended to appeal that ruling. We considered it to be a ruling on an issue of law, which the magistrate's decision is. It's a ruling of law. He decides that it's a claim and that that removes the marking problem. And we think that that's what the issue, perhaps a novel issue for this court is, whether a disclaimer like that, which it's perfectly okay if the patentee disclaims for the purpose of its own self-interest. It's a different matter if you disclaim a claim to take rights away from the public. I don't think you can disclaim a claim and avoid an inequitable conduct charge. That's Carney and Trecker. I don't think you can disclaim a claim and avoid counterclaims. What's the, I mean, trying to think about how to interpret the marking statute for this disclaimer situation. I keep trying to think of the scenario in which the public is harmed by the absence of marking at the earlier time that should have occurred, even though that claim is not asserted, even though the claim has been disclaimed in a way that the marking statute is designed to get at. I believe your honor that the marking statute is designed to give the public a right due to the failure of the patentee to advise the public in the way demanded. The public owns that right by virtue of the statute and to enable all who violate the marking statute to eradicate the policy of the marking statute by eight days before trial, putting in a disclaimer makes mockery out of the marking statute. And that's even as to products quite, quite different from the product that should have been marked that wasn't because the different claims of the patent can cover quite different things. I submit that's what the statute calls for. And if Congress thought that something different should be accomplished, they should have written a different statute. I think the statute requires that the public in any forum is entitled to rely on it. And like trying to eradicate inequitable conduct six years after not marking and eight days before trial, it would make a mockery of the statute to allow a disclaimer to do that. I don't think we have this, but if I remember right, exhibit 10 of Weinstein's report sets out all of the Samsung sales at issue that generated the ultimate damages figure. If there was a marking problem and if, I realize you might have different views about this, one took the attributed five and a half cents or so per unit figure and just multiplied it by the the marking problem here, right? If I followed your honor... There were the what? 290 million sales here, right? And the attributed and the $5.7 million in damages. And you can figure that it's about 5.4 cents per unit. And if the record said there were 47 million units sold before March 15th, 2013, which is I think when the complaint was filed, then you'd multiply those two things, subtract it out, and the marking issue would be over. I believe, as I'm following you, your honor, I think that's right. The idea would be to take the marking sales from the appropriate period, apply the determined royalty to that. That's the amount of money that's attributable to the mismarking. Subtract that out. But for the other problems with damages, which I would love to have some time to address... I wanted to ask you, I thought I saw maybe a suggestion that at some point Claim 40 had been asserted against your client in this litigation. Am I wrong about that? It had been asserted. It was in the case. They pulled it out eight days before trial. That's part of the problem of this, is the idea that this could persist as a violation of the statute until eight days before trial. And then with a piece of paper, don't pay attention to that. It's gone. There's a second lurking issue with the marking question that I don't think the district court reached. The district court issued its summary judgment order denial based on disclaimer. But then there's also this, should the effect of the failure to mark be devoted to just a claim, or a claim by claim basis, or should it be a full patent wide basis? I know the other side made that argument that it ought to be claim by claim. Your side... We believe it affects the patent. It affects the whole patent. Again, by analogy to... But the district court didn't rule on that. And so it's unclear to me whether that issue would need to go back. Probably. I don't believe the district court, having done what he did, needed to reach that because the ruling that he made took the whole marking issue out of the case. And therefore, the extent of the impact and remedy didn't need to be addressed. So if you find, as we submit you should, that there was a marking violation, not cured by disclaimer, it would need to go back. It would also need to be determined what the monetary impact of that is and how you calculate that in relation to the patent claim. If I remember right, there's at least in one area some precedent, maybe you can clarify, that distinguishes claims within a patent for marking purposes and what's asserted. I'm thinking of Hansen and Crown Packaging where method claims are ordinarily not... Don't generate a marking requirement, but they do if there are system claims in the same patent. But Hansen and Crown Packaging, I think, say something like, but only the method claims are asserted here, so we don't need to worry about marking. That's a way of saying, maybe you do look inside a single patent, sometimes, for marking purposes to distinguish claims. Well, certainly, I think you have to do that to see what was asserted, whether the asserted claims are product claims that would invoke the requirement or method claims that might not. I remember precedent like that. I can't quote what it says, but I know there's precedent of that kind. So your point, as I understand it, is that in situations like that, that's a situation where the marking statute doesn't even apply because all the claims asserted were directed to method claims. No, I'm not sure about that because I think the same kinds of cases that Your Honor is referring to talk about situations when there is a mix of method and apparatus claims, and I can't tell you as I stand here what the impact in those cases is of the mix of claims. I just don't have that in mind. So I just thank you, Your Honor. We obviously have serious damages issues. I'll leave that for the briefing. We will restore, at least for current purposes, three minutes. Thank you. I appreciate that. Mr. Heim, may it please the Court. There was substantial evidence to support the jury's verdict in this case on both the issues of non-obviousness and on damages. With respect to the non-obviousness issue, there were four separate bases that distinguished the jury. There was a general verdict only, so we don't know which bases the jury adopted so that, for example, if the claim construction were set aside, we couldn't just affirm because the jury might have latched onto that particular basis in deciding what Boer did or didn't teach and not the other basis. That's exactly correct, Your Honor. We have what Apple versus Samsung referred to as a black box verdict. We have a general verdict on the issue of obviousness in our favor. So under the recent in-bank ruling, we presume all facts in our favor, and there were substantial evidence to support four different outcomes that would have resulted in non-obviousness of these claims. The first one that applied to all the claims was the master-slave issue. The principal reference, Boer, did not have a master-slave, although their expert at one point in time actually suggested that it did, and he lost all credibility, quite frankly, in the case. He took the position at 1615, 1651, 1653, and at 1695 that Boer was actually a master-slave system. He was then crossed on that very issue, and he conceded that it wasn't. At 1651 through 1654, he acknowledged that it was a CSMA slash CA protocol that was used to control access to the network. The reference he relied on for his motivation was the Upender reference. Upender teaches a way, and it undermines the motivation to combine, and it teaches a way in ways that are very clear. It says master-slave. As a doctrinal point, am I right that those are actually two different things? That is, a jury could find, I don't see enough here to persuade me that there's a motivation to combine without really asking a teaching away question, that teaching away is about the evidentiary basis for upsetting an otherwise compelled inference of a motivation to combine? I agree completely, Your Honor. They are two different issues, and the jury was instructed on those two different issues in this case. The teachings of Upender impact both of those. What Upender says is that master-slave is unacceptable. If that's not discouraging, if that's not a disparagement, I don't know what is. It says it's inefficient. What he quoted from Allergan is worse than that. Let's look at the Apple-Samsung case. Let's look at the Spectralytics case. There are other cases that are in this same sort of situation. But we have, it's unacceptable, it's inefficient, it is inflexible in advanced situations, and that appears at 2429, the first two, 2433 at the third. There is a table at 2434 that actually compares the master-slave or polling with the CSMA slash CA. CSMA CA, which is what Bohr uses, has got an up arrow. It's good in every single category. The polling has, I think, two good up arrows, but it also has three down arrows, which means poor. In addition to the other disparagements that we see in the document itself, there are additional things that are shown in the table about prioritization, about robustness, things like that that clearly teach away. In addition to that, we have the credibility issue that really is central in this case with respect to Dr. Goodman on his testimony on these very points, especially on the master-slave, but really on everything that concerns Bohr. He was not a credible witness. That's issue number one. Issue number two, different types. There was substantial evidence on that point. Dr. Morrow testified that there are three ways to vary the characteristics of a carrier wave for modulation purposes. He said you can vary the frequency and the phase. Dr. Goodman, on cross, admitted at 1655 through 1656 that all of the modulation techniques used in Bohr used phase shift keying. He never once, and nor does Bohr show, any modulation of amplitude or frequency. It modulates phase. Of the categories that Dr. Goodman has modified is phase in the Bohr reference. In addition, Dr. Morrow offered the testimony that counsel referenced. He did this as part of his infringement test. It's at 1083. He said that the way I determine whether or not modulation techniques are in different families is I look to see if there's any overlap. In this case, for my infringement case, there was no overlap. It was phase modulation, frequency modulation. It was reasonable for the jury to infer from that test that he used that the same test would apply with respect to differences between the prior art. Can you step back for a minute? Did I hear you talk about what Goodman said about Bohr? I'm sorry. I did talk about what Goodman said about Bohr previously. I realized I was stepping seven steps back. What was the citation for that? It's 1655 through 1656. Dr. Goodman is asked on cross-examination about the modulation techniques he identifies in Bohr. He concedes that the first one that the two megabit per second also does phase shift keying, which is a form of phase modulation. Then he admitted that the five megabit per second and the eight megabit per second also included phase shift keying. He never testified that they do any sort of amplitude modulation or frequency modulation. There was testimony when you put it together with what Dr. Goodman said. He didn't unpack what's in quadrature and explain how that works more generally? He did during the direct examination. He talked about the different modulation techniques in PPM slash DQPSK. He offered that that was a different modulation type than the PSK. He also conceded that both of them use PSK. With respect to PPM, he offered that there was a fourth way to modulate information onto a carrier wave that was inconsistent with the testimony that was offered by Dr. Morrow. There was a factual dispute between the experts on what it took to satisfy the court's claim construction on the first and second modulation methods. There's a construction on that that appears at 121 through 136 of the record. Are there more than three families? Amplitude, frequency, phase? With respect to different types, if we're talking about different types, the comparison that Dr. Morrow used was to take a look at the first modulation technique and see whether or not there's an overlap. In the example given, in the definition in the prosecution history, you have on the one hand FSK and then you have QAM, which is a combination of both amplitude modulation and phase modulation. Because there was no overlap, Dr. Morrow said, clearly they're in different families. There's no overlap here. That's a way, as part of my infringement test, I can tell that there's no overlap. He did that for the FSK and he did that for the PSK that appeared in their devices, that's used in their techniques. To answer Your Honor's question, there might be different ways to characterize the families, but what you're looking for at the end of the day, according to Dr. Morrow's testimony, is whether or not there is an overlap or not. If there is an overlap, then it's not in different families, according to his testimony. I'll talk just briefly about the claim construction. The claim construction was based, and there's a very good discussion in the order at 137, I believe, through 144, talking about the claim construction. It was legally correct. It was based upon a definitional statement that was made during the prosecution. There's been a lot of suggestion that there was something sinister about what happened, but if you take a step back and look, you can see that there's a rejection that occurred at 2165, with respect to some of the claims, and an objection that occurred as to some of the claims, not claim one. If you look at 2171, you can see that it's the SIWI Act reference that's actually used. That's part of the discussion that's being used in the rejection. In response, there's an amendment that occurs to claim one, even though it was allowed. It's clear, when you connect the dots together, that the applicant was doing the smart thing. They were trying to distance themselves from the SIWI Act reference, which used both frequency modulation and OFDM modulation. They put in the different types language, along with that statement, to make it very clear, to make it crystal clear what they were referring to, which is different families of modulation. That prior reference that they were distinguishing, according to you, was both types of modulation relied on frequency. That's correct, Your Honor. You can see that in the abstract of that patent at 2436. There was also an argument about reversion. With respect to reversion, Samsung just didn't put on a clear and convincing case. Their testimony was ambiguous. It was about one question, didn't refer to any of the passages that are found in the Boer reference for support for that. In their appeal briefs, they now want to cite to other passages, but that was not before the jury. What they want to do is supplement their presentation to the jury by saying, you can just look at these other passages in Boer. Even if you look at them, if you take a hard look, it still does not do the reversion that's required in the claims. With respect to Siwiak, it's clearly a hindsight reconstruction. With respect to Claim 21 of the 228, they're literally taking limitations and saying, where is this found in the prior art? Where is this found in the prior art? That was their entire invalidity presentation. They never explained why it would have been obvious to put together all three different teachings, which are Boer, Uppender, and Siwiak. They never mentioned them once in the context of Claim 21. If I could turn just to the marking issues quickly. I wanted to ask you, before you start, what kind of argument were you trying to raise in your brief on page 67, in the last page? Is that going to the claim by claim versus patent distinction? I'm sorry. Let me take a look real quick. It goes to that, and it also explains the context that we're dealing with here. If we can just take a step back, their position was that Claim 40 was much broader than any other claim in the case. So broad that it extended beyond our infringement accusations in this case, which were focused on enhanced data rate and Bluetooth. It was their position that it covered Wi-Fi, 802.11g Wi-Fi products. That was their position in their summary judgment motion. We responded by saying, well, we have disclaimed that claim because it had been the subject of an IPR. We dropped it. We dropped about five claims at that same point in time. It was just before trial, but it was also because the IPR had been granted with respect to that That's how we picked those claims to go to trial. The IPR was denied on all three of those claims. You had originally asserted Claim 40 in this case. Claim 40 was originally asserted in this case, and it was dropped. Correct. So they filed a motion for summary judgment. The magistrate judge, what he said is that you as the movement have not proven to me that you are entitled to judgment as a matter of law. But then Judge Gilstrap's language in adopting it goes further than that. It does go somewhat further, but if you look at his result, he is just adopting and he is just denying their motion. There's nothing in there to suggest that he was granting summary judgment in our favor. Both parties proceed to trial. Both of them think it's a live issue in the case. We put on evidence. When you say both parties believe it was a live issue in the case, are you saying Claim 40 was a live issue in the case? I mean, all the other claims. Yes, that was a live issue in the case, but Claim 40 as well? Your Honor, we thought marking was a live issue in the case. They had an expert report that was going to talk about, Dr. Goodman was going to talk about marking. He didn't offer any evidence at trial. Was he going to say that claims other than Claim 40 covered licensed products? Your Honor, I don't remember for sure. Because if he was, then that really doesn't establish anything. I mean, what they said at the 50A oral discussion of Jamo L. was whatever else was once going to be here in the trial, Claim 40 was never going to be here because you said they cannot, we cannot rely on marking, on failure to mark a product covered by Claim 40 because it's been disclaimed. So, of course, we didn't put on any evidence on that. The truth is I don't remember for sure, but it would have had to have been Claim 40 because there are so many distinctions relative to the other claims. There's master-slave. There are different types of language that did not appear in Claim 40. And so, there are so many other distinctions in the other claims. I have to assume that it was. Nonetheless, given the legal ruling on disclaimer that there was no chance of proving marking because Claim 40 had been disclaimed, how can, how could it be expected that evidence would be put in? Wouldn't it be futile to put in evidence on whether the licensee is practicing Claim 40? I don't believe so, Your Honor. We offered evidence from our witness that we didn't believe that there was a marking obligation with respect to zone and it wasn't specific to Claim 40. They put on testimony through two witnesses through deposition, Mr. Wood at 1730, who says we did not include a marking provision in the agreement. However, we didn't believe that they had any products that were covered by our products. They put on testimony from another witness. What about the legal, there's a legal decision by the court that Claim 40 for marking doesn't matter because Claim 40 was disclaimed. That's a legal conclusion, right? It is, Your Honor, if summary judgment was granted in our favor. And I don't believe that the judge here granted summary judgment in our favor. I think that this was a live issue that went to trial. Legal determinations can be made in denials of summary judgment and those issues can be appealed so long as it's a legal issue. Our court has held that. It has in the claim construction contest, absolutely, Your Honor. I don't know if it's gone beyond that really. I mean, the general rule in the Mead-West-Baco case is you don't get to apply the denial of a summary judgment. I mean, that's what this court has said. That's what the Supreme Court has said. I want you to eventually get back to your red brief, page 67, the follow-up to Judge Stoll's earlier question. But I just want to clarify something. The other side said that you conceded and the judge found below that Zone was practicing Claim 40. Do you agree with that? Because I didn't see you in your red brief challenge that when they brought that up in their blue brief. We did not put on evidence during the summary judgment phase that there was any distinction between Claim 40 and the 802.11g products. We did not offer any evidence at the summary judgment phase. We did contend that there was a factual dispute on the claim-by-claim issue, which is what the magistrate judge said in footnote 407 of his opinion, that if, in fact, I were to adopt this approach, that there's still a fact question that would arise as to whether or not this claim is distinct from the other claims or not. And so that's what happened at the summary judgment phase. We did not offer affirmative testimony trying to show that Claim 40 was not met. I don't think they put on evidence at trial because they didn't want their witness subject to cross-examination that there were additional products that Samsung sold that infringed. I mean, I think that's what happened here. I'm just trying to figure out that if we disagreed with Judge the question of whether or not Zones products practice Claim 40 needs to be sent back and findings made by the judge, or do you agree with the other side that you don't dispute that, in fact, Zones products do practice Claim 40? I think to the extent that there's a live dispute, it would be on the claim-by-claim issue. I think that would be the live dispute. Which you did not present as, in your red brief, as an alternative ground in support of Judge Gilstrap's ruling, even though he didn't rely on that ground. That's correct, Your Honor. And the question that I asked, assuming that marking is ultimately a problem here, is there information in the record? I sort of assume there is because you know how many what's it, 290 million units were sold and you multiply it by something. You have the dates of those sales and so you can figure out how many of them were pre-March 15, 2013. Yes, Your Honor. It's a pure accounting function that the court could do or the district court judge could do. Well, I don't think we can do it because we don't actually have Exhibit 10 of the Weinstein, which I think is the document because that's under seal and therefore not available under PACER. I suppose we can get it, but I don't think we're going to do that. I see my time is up unless there's any other questions. Thank you very much. Mr. Jenner. Your Honor, a few things. First of all, I'd like to remove this comparison, again, to what I took to be Apple-Samsung, the recent Hong Kong decision where substantial findings evidence is presumed. There was a witness in that case who testified, Coburn or Cockburn was his name, on behalf of Apple, who was in very substantial part a basis for finding substantial evidence to support the proponent. There's no witness in this case. They did not put on an invalidity case. All they claim to have is what they think Upender shows and what they think they Upender does not say that polling is unacceptable or inefficient. It characterizes it as a choice. I read one quote from it about simplicity and determinacy. Another place it says it's ideal for a centralized data acquisition system where peer-to-peer communication and global prioritization are not required. There is no statement in here that is a teach-away as to Upender is a teach-away as a fact would be inconsistent with the cases from this court that I referred to earlier. We're back as far as claim construction is concerned. If the claim construction is wrong because it doesn't address the incompatibility issue, which should have been addressed, then I believe, again, under this court's avid decision, there's an absence of evidence that would otherwise support the jury verdict, substantial evidence. There's no evidence that would support the jury verdict, and the case needs to go back on claim construction at minimum. And I think all the evidence is the other way. Goodman did testify about reversion. Counsel doesn't refer to many other pages of testimony that we referred to in our brief, and the reference itself clearly teaches reversion. As far as SUIAC is concerned, there was testimony about SUIAC disclosing the address limitation by Goodman and why it would be desirable to make the combination because of power savings. So all of the other issues that are raised, the evidence is solely the evidence proffered by Samsung through Goodman and the documents. There was no contrary case presented. It comes back to the claim construction, whether the right construction because of what the patent specification teaches is that different methods means incompatible methods. You'll find that repeatedly throughout the patent, particularly in column one and column two, where it talks about the problem to be addressed and solved. That's what the whole point of the patent is. And this whole business that came up, and counsel referred to it again, about the need for total incompatibility, that's not in the construction at all. That's something that based on the testimony given by Morrow on infringement, not on validity, he never touched the Bohr prior art reference. So that all of the testimony about incompatible methods, testimony, all the argument about incompatible methods is a construct based on irrelevant infringement testimony, and then synthesized at the end of the brief into the meaning of the incompatible methods, and the judge himself didn't go there.